IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| NOAH RASHAD LYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:23-cv-00075 |
| | ) | |
| DAWN HARLESS, et al., | ) | JUDGE CAMPBELL |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Noah Lyles, a state inmate confined at the Maury County Jail, has filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

The case is before the Court for ruling on Plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA).

### I. APPLICATION TO PROCEED IFP

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Plaintiff's IFP application establishes that he lacks the funds to prepay the filing fee. Accordingly, the IFP application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's

preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602

U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must also afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Facts**

The Complaint alleges that, on October 3, 2023, Defendant Dawn Harless fired Plaintiff from his kitchen job at the Maury County Jail based on his race. (Doc. No. 1 at 4, 5, 7.) He alleges that Harless, together with Maury County Sheriff's Deputy Jason Bailey (Harless's son-in-law and co-Defendant), targets African-American inmates for discriminatory harassment and termination from their kitchen jobs, without the due process afforded by disciplinary procedures and without regard for the impact that such terminations may have on the inmates' ability to earn good-behavior sentence credits. (*Id.* at 5–7.) The Complaint also names Harless's employer Trinity Service Group ("Trinity") as a Defendant, alleging that it "is and was aware of Defendant Harless['s] practices" but has allowed her to retain her management-level position, and is therefore "equally responsible for inmates['] terminations." (*Id.* at 5.)

3

**C. Analysis**

"The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under [the Due Process Clause of] the Fourteenth Amendment," *Perry v. Horton*, No. 2:18-cv-200, 2019 WL 311796, at *6 (W.D. Mich. Jan. 24, 2019) (citing, *e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)), nor any property right to a job or to wages for work they perform. *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (citations omitted). "Rather, prison administrators may assign inmates jobs and wages at their discretion." *Vick v. Core Civic*, 329 F. Supp. 3d 426, 451 (M.D. Tenn. 2018) (citing cases). However, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). This protection extends to race-based prison job assignments and terminations. *See Newson v. Trinity Services Group, Inc.*, No. 3:23-CV-00081, 2023 WL 3046344, at *4 (M.D. Tenn. Apr. 21, 2023) (citing *Robinson v. Michigan Dep't of Corr. Med. Health Providers*, No. 19-10584, 2019 WL 2059120, at *8 (E.D. Mich. May 8, 2019) ("[G]enerally, despite the lack of a constitutional right to specific jobs or training, the Equal Protection Clause prohibits prison officials from making assignments based on race." (citations omitted))).

"For a prisoner to state a discrimination claim, he need[s] only to allege sufficient facts to show that a state actor intentionally discriminated against [him] because of membership in a protected class." *Newson*, at *5 (quoting *Brand*, 526 F.3d at 924) (internal quotation marks omitted). In *Newson*, the Court allowed a discrimination claim to proceed based on the allegation that the decisionmaker included "an unprompted reference to Plaintiff's race when explaining her reason for firing Plaintiff." *Id.* Whereas here, the Complaint merely alleges that Defendant Harless

"us[es] race . . . in deciding what inmates to keep employed in the kitchen," and that she "has used racial overtones towards other inmates and has spoken privately to other inmates regarding race, using profanity adjectives towards inmates." (Doc. No. 1 at 4, 5.) It generally alleges that Defendant Bailey "is used as the enforcer of Defendant[] [Harless's] racial antics" and "has been coerced into targeting African-American inmates based on Defendant Harless['s] actions and decision[s]" with regard to staffing the Jail kitchen. (*Id.* at 6.) Specifically as to Plaintiff, the Complaint alleges only that he "was terminated based on race, [and] was subjected to verbal attacks and intimidation" by Harless. (*Id.* at 7.) These allegations against Harless—and, by extension, Bailey and Trinity—are entirely conclusory with regard to the racial component and phrased only in general terms (racial "overtones," "antics," and "targeting") with regard to Defendants' expressions of racial animus. But only well-pleaded, non-conclusory allegations are to be presumed true when reviewing for the plausibility of a Complaint's claims. *See Vullo*, 602 U.S. at 181; *Inner City*, 87 F.4th at 749. Here there is a lack of specific allegations from which the Court could infer that Harless's (and Bailey's) termination of Plaintiff on October 3, 2023, was in fact based on racial animus. Unless Plaintiff can cure it, this dearth of specifics will keep this case from proceeding.

In any event, the claim against Trinity cannot survive initial review. The Complaint makes clear that Trinity's liability is asserted because it (1) employs Harless, (2) is aware of her practice of terminating employees without due process and generally acting as a tyrant over the Jail kitchen, and (3) implicitly condones that practice by keeping Harless as kitchen manager. (*See* Doc. No. 1 at 5.) But because Section 1983 does not support liability under a *respondeat superior* theory, Trinity cannot be held vicariously responsible for its employee Harless's misconduct; it can only be held liable for its own misconduct, via a corporate policy or custom that causes a constitutional

violation. *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012).

Here, as in *Newson*, "it is not reasonable to infer that Trinity's alleged policy of permitting employees to fire inmates at-will directly caused [Harless] to engage in the alleged racial discrimination." 2023 WL 3046344, at *7. Nor is there any allegation that Plaintiff's discriminatory firing was directly caused by a specific Trinity policy or custom of allowing racially discriminatory terminations. Accordingly, Trinity's liability under Section 1983 is not plausibly alleged. *See Savoie*, *supra* (finding that Section 1983 liability only attaches if corporate policy or custom "was the moving force behind the deprivation of the plaintiff's rights") (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

Although the Complaint as currently constituted does not state any plausible claim, the Court in its discretion "can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). The Court will exercise that discretion in this case and allow Plaintiff an opportunity to amend in order to provide additional factual support for his equal protection claim against Defendants Harless and Bailey.

### III. CONCLUSION

As explained above, although the Complaint is subject to dismissal for failure to state a claim on which relief may be granted, 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), the Court will allow Plaintiff to file an Amended Complaint in response to this Order within **30 DAYS** of the entry of the Order.

The Clerk is **DIRECTED** to provide Plaintiff with a form for filing a civil rights complaint (Pro Se Form 14). Plaintiff is cautioned that failure to file an Amended Complaint using the provided form within 30 days (or to seek an extension of this deadline before it expires), or failure

to keep the Court apprised of his current address, will result in the dismissal of this action.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE